UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SL EC, LLC, et al., | ) |
| Plaintiffs, | ) |
| vs. | ) Case No. 4:18-cv-01377-JAR |
| ASHLEY ENERGY, LLC, et al., | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiffs' Motion for Leave to File First Amended Complaint. (Doc. 25.) Defendants oppose the motion. (Doc. 31.) Also pending is Defendants' fully briefed Motion to Dismiss. (Docs. 14, 23, 24.)

**Background**

Plaintiffs make the following allegations (Docs. 8, 25-1): In July 2015, Plaintiff SL EC, LLC, acquired an option to purchase the Ashley Power Plant in St. Louis, Missouri, from Trigen-St. Louis Energy Corporation. SL EC and Plaintiff Michael Becker[1] hired Plaintiff law firm Davis & Garvin, LLC ("D&G") to represent SL EC throughout the "negotiation, acquisition and closing" of the purchase "and such matter related thereto." (Doc. 25-1 at 2.) SL EC signed a fee agreement with D&G that called for hourly compensation plus reimbursement for costs and expenses (the "Fee Agreement").

---

[1] It is not clear from Plaintiffs' complaint but the Court infers from their allegations that Becker is an officer of SL EC.

SL EC formed Defendant Ashley Energy, LLC, and assigned to it SL EC's option to purchase the power plant. SL EC directed D&G to represent Ashley Energy as the buyer. The fee agreement between SL EC and D&G expressly authorizes representation of Ashley Energy as a "matter related to" the purchase of the power plant. In May 2016, SL EC was approached by Defendant Power Investments, LLC ("PI"), who offered to secure financing for the purchase in exchange for equity in the ownership of power plant. PI obtained a term sheet from a private equity firm called Arena Investors, LP, and thereafter SL EC, Becker, and PI entered into a membership purchase agreement ("MPA"). The MPA called for PI to purchase SL EC's entire ownership interest in Ashley Energy in exchange for two payments totaling $1.7 million, the first due within thirty days of the sale and the second within thirty-six months of closing. (*See* Doc. 28.) In addition, the MPA provided for the release by PI of a loan to Becker. (*Id*.) The MPA states that PI agreed "to accept and assume responsibility for the payment of certain obligations and expenses incurred by [SL EC and Becker] in connection with the acquisition of the Ashley Power Plant." (*Id*. at ¶ 1.G.) Plaintiffs attach several emails purporting to show that the parties discussed the terms of the MPA and related payments.

On August 10, 2017, Ashley Energy, whose sole member was then PI, closed on the acquisition of the power plant. Representing PI in the purchase were Defendant Mason Miller and his law firm Defendant Miller Wells, PLLC. Ashley Energy borrowed approximately $8.5 million from Arena Investors to buy the plant. On the day of the sale, Miller instructed Becker—who was at that point the only authorized signer for Ashley Energy's operating bank account—to make three wire transfers to Miller Wells, two of which were forwarded to Miller's personal account for reimbursements. In the ensuing weeks, PI made two cash payments to Becker and delivered an unexecuted copy of the note, marked "paid in full," which together represented the

full amount of the first payment due under the MPA. Since then, no other payments have been made.

After numerous attempts to obtain payment, Plaintiffs filed suit in Kentucky state court, seeking to enforce Defendants' obligations under the Fee Agreement and MPA under theories of fraud and unjust enrichment (the "Kentucky Action"). (*See* Doc. 15 at 2.) Defendants removed the suit to the Eastern District of Kentucky on July 24, 2018. (*Id*.) On October 27, 2017, while the Kentucky Action was ongoing, Plaintiffs filed suit in Missouri state court, raising many of the same claims in had raised in the Kentucky courts (the "First Suit"). (Doc. 15 at 1.) Defendants removed the First Suit to this Court on November 22, 2017. (Doc. 1 in *SL EC v. Ashley Energy*, No. 4:17-cv-02751-JAR.) Because the Kentucky Action was ongoing, this Court dismissed the First Suit without prejudice on May 14, 2018. (Docs. 33, 32 in *SL EC*, No. 4:17-cv-02751-JAR.)

On July 30, 2018, Plaintiffs again filed suit in Missouri state court, alleging breach of contract and fraudulent conveyance and seeking to pierce the corporate veil and force the imposition of a constructive trust (the "Second Suit"). (Doc. 8.) Defendants removed the case to this Court on August 20, 2018, and later moved to dismiss it on numerous grounds. (Docs. 1, 14.) Since then, Plaintiff filed this Motion for Leave to Amend, seeking to add a claim to equitably estop Defendants from denying their obligations under the Fee Agreement and MPA. (Doc. 25.) Defendants oppose the motion on the ground that the amendment is futile and would unfairly prejudicial. (Doc. 23.)

## Discussion

Motions to amend pleadings are governed by Rule 15(a) of the Federal Rules of Civil Procedure. See Lexington Ins. Co. v. S & N Display Fireworks, Inc., 2011 WL 5330744, at *2 (E.D. Mo. Nov. 7, 2011). Under Rule 15(a), leave to amend should be "freely given when

justice so requires." Fed. R. Civ. P. 15(a)(2). Under this liberal standard, denial of leave to amend pleadings is appropriate only if "there are compelling reasons such as undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the nonmoving party, or futility of the amendment." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). "The party opposing the amendment has the burden of demonstrating the amendment would be unfairly prejudicial." *Nadist, LLC v. Doe Run Res. Corp.*, No. 4:06CV969 CDP, 2009 WL 3680533, at *1 (E.D. Mo. Oct. 30, 2009) (citing *Roberson v. Hayti Police Dept.*, 241 F.3d 992, 995 (8th Cir. 2001)). "Whether to grant a motion for leave to amend is within the discretion of the Court." *Id.* (citing *Popoalii v. Correctional Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008)).

The Court recognizes Defendants' concerns but finds that they have not shown that granting Plaintiffs request for leave would be unfairly prejudicial. Of note, while this may reasonably be described as the third iteration of this case, this specific iteration is relatively early in its procedural posture. It is only months old and no case management order has been entered. Moreover, the Court finds no reason to conclude that Plaintiffs are guilty of "undue delay, bad faith or dilatory motive." *Sherman*, 532 F.3d at 715. Likewise, the Court does not, at this early juncture, believe that the amendment would be futile. *Id.*

The Court also recognizes that Defendants' Motion to Dismiss is fully briefed and ripe for ruling, but notes Defendants' own assertion that the Amended Complaint may be subject to many of the same arguments for dismissal, meaning any prejudice to pursuing dismissal that might be caused by allowing the amendment would be minimal.

## Conclusion

Because leave is to be freely given and would be just in this instance,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Leave to File First Amended Complaint (Doc. 25), is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Motion to Dismiss (Doc. 14), is **DENIED as moot.**

Dated this 2nd Day of April, 2019.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE