UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SL EC, LLC, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | )    Case No. 4:18-CV-01377-JAR |
| | ) |
| ASHLEY ENERGY, LLC, et al., | ) |
| | ) |
|     Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Terminating Sanctions (Doc. 195). The motion is fully briefed and ready for disposition.

**I.**     **BACKGROUND**

This case concerns the relatively complex purchase of a historic steam power plant in downtown St. Louis (the "Plant"). This Court has previously summarized the relevant facts:

> Until August 2017, the Plant was owned by Trigen-St. Louis Energy Corporation ("Trigen"), and the City of St. Louis held an assignable right to purchase the Plant. (Doc. 139 at ¶¶ 1-2). The city assigned this right to Plaintiff SL EC, LLC ("SLEC"), a company solely owned and controlled by Plaintiff Michael Becker ("Becker"). (*Id.* at ¶ 2). In May 2016, after realizing SLEC lacked sufficient funds to purchase the Plant outright, Becker approached Defendant Mason Miller ("Miller"), a member of Defendant Power Investments, LLC ("Power Investments") and partner at Defendant Miller Wells, PLLC ("Miller Wells"). Becker proposed to Miller that Power Investments and others provide funding in exchange for equity in the Plant. (*Id.* at ¶¶ 14-16).
>
> In October 2016, SLEC executed an agreement (the "Client Agreement") engaging Plaintiff Davis & Garvin, LLC ("D&G") and Bick & Kistner, PC ("B&K") to provide legal counsel regarding the "negotiation, acquisition, and closing of the purchase of the [Plant]." (Doc. 90-1 at 1-2). On November 23, 2016, SLEC created Defendant Ashley Energy, LLC ("Ashley Energy"), the vehicle which would ultimately be used to purchase the Plant. (Doc. 139 at ¶ 5).

1

Becker and SLEC's plans quickly deteriorated. Throughout 2017, the parties worked to arrange financing for the purchase of the Plant. (Doc. 131-1 at 70-106). On May 15, 2017, Ashley Energy executed an Asset Purchase Agreement with Trigen to purchase the Plant. On August 3, 2017, however, Jim Davis ("Davis") of D&G informed Miller that SLEC could not afford to retain any ownership in Ashley Energy. (*Id.* at 59). Over the following few days, the parties negotiated and executed a Membership Interest Purchase Agreement ("MIPA") and Assignment and Assumption of Membership Interests Agreement ("Assignment Agreement"). Pursuant to these agreements, SLEC sold its entire membership interest in Ashley Energy to Power Investments for a total purchase price of approximately $1.7 million. (Doc. 149 at 1-2).

Plaintiffs SLEC, Becker, and D&G bring claims for breach of contract, fraudulent conveyance, and tortious interference, among others, all resulting from this transaction and the associated events. (Doc. 90). Defendants Miller Wells, Power Investments, Miller, and Ashley Energy have filed counterclaims for fraudulent misrepresentation and inducement, unjust enrichment, and breach of contract, among others. (Doc. 115). To synthesize, there are essentially three categories of issues in this litigation: (1) Plaintiffs are seeking damages relating to an alleged breach of the MIPA and Assignment Agreement, particularly regarding the status of a $1.1 million contingent payment; (2) Defendants have brought counterclaims on related grounds; and (3) D&G alleges that Defendants owe outstanding legal fees incurred in the Plant acquisition. Defendants now contend that this Court should dismiss Plaintiffs' Second Amended Complaint ("SAC") with prejudice due to the allegedly intentional spoliation of relevant evidence. (Doc. 195).

## II.   LEGAL STANDARD

Defendants bring this motion pursuant to both Fed. R. Civ. P. 37(e) and this Court's inherent authority. (Doc. 195 at 1). The Eighth Circuit has advised that the "best practice is to keep the structured analysis for a particular rule separate from the relatively unstructured analysis associated with inherent authority." *Sentis Grp., Inc. v. Shell Oil Co.*, 559 F.3d 888, 900 (8th Cir.

2009). The advisory committee's notes to the 2015 amendment to Rule 37, moreover, specifically indicate that Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used." *See also Blazer v. Gall,* No. 1:16-CV-1046 KES, 2019 WL 3494785, at *2 (D.S.D. Aug. 1, 2019) (Noting that application of Rule 37(e) "forecloses reliance on inherent authority."). But the Eighth Circuit has also held that a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned" under the rules. *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). Accordingly, this Court will first consider whether sanctions for Plaintiffs' alleged destruction of electronically stored information ("ESI") are warranted under Rule 37(e), and second, whether sanctions are appropriate pursuant to this Court's inherent authority.

**III.   ANALYSIS**

Discovery Background

For Plaintiffs, discovery has become a series of missteps. Before discussing the procedural history of the discovery issues in this case and addressing whether sanctions are warranted, it is appropriate to summarize the discovery failures alleged by Defendants which remain relevant on this motion for terminating sanctions[1]:

- *D&G Billing Software*: This is the key issue on Defendants' motion for terminating sanctions. D&G utilized Clio, a subscription-based software service, to track its billing. When D&G ceased practice in 2018, it simply allowed its Clio account to expire despite this litigation having already begun. Davis explains he was "of course aware of his

---

[1] This summary focuses on the key discovery issues which remain relevant on this motion for terminating sanctions and does not necessarily discuss every discovery matter raised throughout this extensive litigation.

3

obligations both to retain client files as well as to retain and preserve records relevant to ongoing litigation," but he "did not at the time understand the nature or existence of the electronic details Defendants are now requesting." (Doc. 155 at 2). Plaintiffs indicated that they have been informed by Clio customer support that the requested documents are unrecoverable. As a result, D&G can only produce a single invoice regarding legal fees incurred in the Plant transaction, but such invoice lacks pertinent information. Defendants point out that Davis failed to preserve time keeping records beyond the single invoice. This Court has already concluded that D&G "failed to adequately preserve relevant evidence" and accordingly "reserve[d] the right to impose appropriate sanctions" should the Clio data remain unrecoverable. (Doc. 158 at 2).

- *Becker's E-mail Account*: Plaintiffs identified Becker's e-mails as key documents in their Fed. R. Civ. P. 26(a) disclosures. When Defendants requested production, Plaintiffs responded that the account had been suspended by Google in December 2019 due to a violation of YouTube's terms of service. This Court ordered Plaintiffs to take reasonable steps to obtain Becker's e-mails, including by subpoenaing Google, and again "reserve[d] the right to impose appropriate sanctions should Becker's e-mails remain unrecoverable." (*Id.* at 3). Despite further attempts at recovery, Becker's e-mails remain unrecoverable. (Doc. 177 at 2).

- *Becker's Stolen Laptop*: In response to a request for local files, Plaintiffs indicated that Becker's laptop was stolen two months after he was locked out of his e-mail account. (Doc. 158 at 3). This Court ordered Plaintiffs to produce the police report demonstrating the laptop was stolen, which Plaintiffs obtained. (Doc. 177-9). There was apparently a USB drive containing additional relevant documents which was stolen

4

along with the laptop, though the USB is not mentioned in the police report. (Doc. 196 at 20 n.7). This Court cannot sanction Plaintiffs for being victims of theft, even if such theft resulted in the loss of discoverable materials and coincided with other discovery failures.

- *Failure to Disclose ESI*: During his deposition, Becker indicated that he used an iPad and Dropbox cloud storage account to store relevant ESI during the course of the Plant acquisition. It appears that neither source was clearly disclosed or produced for review prior to the deposition. (*Id.* at 24).

On December 11, 2020, Defendants filed their first Motion to Compel alleging that Plaintiffs failed to produce various key documents per the issues discussed above. (Doc. 150). After full briefing, this Court granted the motion in part, ordered Plaintiffs to attempt to recover the materials, and expressly "reserve[d] the right to impose any sanctions it deems prudent with regard to the discovery issues." (Doc. 158 at 5). On March 3, 2021, pursuant to this Court's Order, Plaintiffs filed a status report indicating that despite substantial effort, the additional Clio records, e-mail account, and laptop all remained unrecoverable. (Doc. 177).

During this period of discovery disputes, Defendants filed a Motion for Rule 11 Sanctions. (Doc. 165). Defendants argued that D&G "misled the Court about the circumstances surrounding the destruction of its billing records." (Doc. 166 at 3). In a filing before this Court, Davis indicated that around June 2018 he "decided to exit the practice of law and work full-time for IPX Exchange Services, Inc. ("IPX")," which provides qualified intermediary services for taxpayers. (Doc. 155 at 2). Davis further explained that surrendering his law license "minimized any risk that he would be a 'disqualified person'" under the applicable regulations for qualified intermediaries. (*Id.*). Davis neglected to mention, however, that he "ceased practice under the cloud of [a] disciplinary

5

hearing, and the Supreme Court of Missouri entered an order suspending Davis' law license in October 2018." (Doc. 188 at 4; Doc. 166-5). This Court acknowledged it had "little difficulty recognizing that Plaintiffs were not entirely truthful when initially explaining why Davis ceased practice" but denied Defendants' motion for sanctions without prejudice because "the extent of prejudice . . . remain[ed] unclear" at that juncture. (*Id.*). In a subsequent deposition, Davis admitted that statements in a previously filed affidavit representing he allowed the Clio subscription to lapse due to his work as a qualified intermediary "were probably just superfluous" and he "[p]robably should have just left it out." (Doc. 196-2 at 17).

        Sanctions Under Fed. R. Civ. P. 37(e)

Rule 37(e) offers two routes for imposition of sanctions in the event that ESI which "should have been preserved in anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it," and such ESI "cannot be restored or replaced through additional discovery." First, "upon finding prejudice to another party from loss of information," the Court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). The range of sanctions available under this section of the rule is "quite broad" and "[m]uch is left to the court's discretion." Fed. R. Civ. P. 37(e), Advisory Committee's Notes to 2015 Amendment; *see also Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 237 (D. Minn. 2019).

Second, the Court may issue more substantial sanctions such as an adverse inference instruction or outright dismissal, but "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(2); *see Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018) (holding "intentional, bad-faith" misconduct required to impose sanctions under Rule 37(e)(2)). The Eighth Circuit has repeatedly held that the types of sanctions authorized under Rule 37(e)(2) are only justified upon a finding of "intentional

6

destruction of evidence indicating a desire to suppress the truth." *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (citation omitted).[2] The Eighth Circuit has acknowledged, however, that intent "is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pac. R.R.*, 373 F.3d 896, 902 (8th Cir. 2004).

*Rule 37(e)(1)*

This Court finds that D&G's failure to preserve billing records from its Clio account clearly warrants sanctions under Rule 37(e)(1) at minimum. Such ESI unquestionably "should have been preserved in the anticipation or conduct of litigation," was "lost because a party failed to take reasonable steps to preserve it," and "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). This litigation had already begun when D&G terminated its Clio account, and the Court previously determined that D&G had an obligation to preserve these records but failed to do so. (Doc. 158 at 2). *See Stirling v. St. Louis Cty. Police Dep't*, No. 4:11-CV-1932 AGF, 2013 WL 2244638, at *1 (E.D. Mo. May 21, 2013) (emphasis in original) (An "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation – *most commonly when suit has already been filed*."). The billing records are integral to D&G's claim for legal fees in connection with the Plant acquisition. The Court ordered Plaintiffs to "use best efforts to recover all available documents from Clio," (Doc. 158 at 2) and Plaintiffs subsequently indicated that minimal additional records were available. (Doc. 177 at 1-2). The

---

[2] The Eighth Circuit has clarified that "a district court does not abuse its discretion by imposing sanctions, even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced." *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010) (citation omitted). There is some tension between this holding and the clear requirement of Rule 37(e)(2) that a court find the party acted with intent to destroy evidence.

Court also believes that Plaintiffs were less than forthright regarding the reason Davis ceased practicing law, as discussed further below.

Regarding the loss of access to Becker's e-mail account, this Court does not have sufficient evidence to conclude that Becker and SLEC "failed to take reasonable steps to preserve" the information. Fed. R. Civ. P. 37(e)(1). Google suspended the account due to an apparent violation of YouTube's terms of service. The record reflects that Google suspended the account on or about November 30, 2019, and Becker began corresponding with Google in an attempt to restore access as early as December 4, 2019. (Doc. 155 at 4-5; Doc. 155-2). Per this Court's Order (Doc. 158), Plaintiffs issued a subpoena to Google on January 27, 2021. (Doc. 177-4). After initially objecting (Doc. 177-5), attorneys for Google indicated that the e-mail account was deleted "shortly" after the suspension for violation of Youtube's terms of service. (Doc. 177-7). Because many e-mails within Becker's account included Davis or were forwarded to Plaintiffs' counsel, a substantial number of e-mails have still been produced. (Doc. 155 at 5-6). The termination of the e-mail account is extremely unfortunate, and Defendants' associated frustration understandable, but the Court does not believe these events or the other discovery failures alleged by Defendants justify sanctions against Becker and SLEC under Fed. R. Civ. P. 37(e)(1).

*Rule 37(e)(2)*

The more difficult question is whether Defendants have adequately demonstrated that D&G "acted with the intent to deprive another party of the information's use in litigation." Fed. R. Civ. P. 37(e)(2). The Eighth Circuit recognizes that intent "is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other

factors." *Morris*, 373 F.3d at 902. The question before this Court is whether D&G intentionally deprived Defendants of ESI.

Considering the unique circumstances, the Court concludes that Davis acted with intent to deprive Defendants of D&G's full billing records and sanctions under Rule 37(e)(2) are appropriate. First, D&G put its legal fees at issue in this litigation and then proceeded to terminate their billing software without preserving all relevant records. Second, Davis' status as an attorney means he must have been acutely aware of the relevance of detailed billing information in this litigation. No reasonable person would believe Davis' claim that at the time he permitted the Clio account to expire he "did not . . . understand the nature or existence of the electronic details Defendants are now requesting." (Doc. 155-1 at ¶ 9). Even if the Court accepted this implausible statement, Davis has admitted in his deposition that upon receiving a discovery request from Defendants he declined to involve his information technology contractor. (Doc. 196-2 at 35-38). Yet Davis repeatedly claims in his deposition that he does not "have the technical background to answer" particular questions about the lost data. (*Id.* at 37). At minimum, Davis acted in bad faith by failing to obtain necessary assistance when under a clear requirement to preserve important information.

D&G has produced a single invoice lacking pertinent information (Doc. 196 at 18); it is implausible that Davis could have believed that such invoice was sufficient to pursue a claim for legal fees in this complex litigation. The misconduct here is "made all the more egregious by the fact that [Davis] is an attorney." *Brown v. Ameriprise Fin. Servs., Inc.*, 276 F.R.D. 599, 606 n.6 (D. Minn. 2011); *see also Banco Portugues Do Atlantico v. Magi France, Ltd.*, No. 88 CIV. 5221 (JES), 1990 WL 16109, at *3 (S.D.N.Y. Feb. 14, 1990) ("[A]n attorney is held to a higher standard because of his or her professional obligations.").

9

Third, and perhaps most critically, Plaintiffs had already filed this case when Davis terminated the Clio subscription. *See Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010) (citation omitted) ("[A] district court does not abuse its discretion by imposing sanctions, even absent an explicit bad faith finding, where a party destroys specifically requested evidence after litigation has commenced."). Destruction of critical evidence after litigation has begun is particularly egregious. *See E*Trade Secs. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 589 (D. Minn. 2005) (internal quotations omitted) ("When litigation is imminent or has already commenced, a corporation cannot blindly destroy documents and expect to be shielded by a seemingly innocuous document retention policy.").

Fourth, Davis proceeded to mislead the Court when explaining why he ceased practicing law and terminated the Clio account. In an affidavit in response to Defendants' initial motion to compel, Davis stated that he "made the decision to exit the practice of law and work full-time for IPX," and "[l]eaving D&G and surrendering [his] law license minimized the risk of being a 'disqualified person' under the regulations." (Doc. 155-1 at ¶¶ 4, 6). In reality, Davis conceded to the Missouri bar in July 2018 that he was guilty of professional misconduct and agreed to a joint recommendation providing for an indefinite suspension of his law license. (Doc. 166-4). On October 30, 2018, the Missouri Supreme Court accepted this recommendation and suspended Davis' law license indefinitely. (Doc. 166-5). As this Court has previously noted, Davis operated both IPX and his law practice for years before his license was suspended, "add[ing] further doubt to D&G's claim that D&G ceased practice so that Davis could become a qualified intermediary." (Doc. 188 at 4 n.2). Davis has now admitted that the statements in his affidavit "were probably just superfluous" and he "[p]robably should have just left it out." (Doc. 196-2 at 17). Davis' affidavit was deceptive at best, and Plaintiffs' multiple attempts to explain away these

10

misstatements have been unpersuasive. *See Keefer v. Provident Life and Acc. Ins. Co.*, 238 F.3d 937, 941 (8th Cir. 2000) (citations omitted) ("[W]hen a litigant's conduct abuses the judicial process, the remedy of dismissal is within the inherent powers of the court."). Davis had clear motivation to hide his suspension given the central role of his credibility in this case.

Fifth, the Court must contextualize this particular intentional destruction of ESI within Plaintiffs' consistent pattern of discovery abuses in this case. *See Chrysler Corp. v. Carey*, 186 F.3d 1016, 1021 (8th Cir. 1999) (affirming district court's sanctions where particular discovery abuse was just "the tip of the iceberg"). As discussed above, Becker lost access to his e-mail account, which presumably contained numerous relevant communications concerning the Plant acquisition and associated legal services by D&G. Plaintiffs also failed to promptly disclose additional sources of ESI, while Davis misled the Court when attempting to explain away the termination of D&G's Clio subscription. *See Schubert v. Pfizer, Inc.*, 459 Fed. App'x 568, 573 (8th Cir. 2012) (per curiam) (noting pattern of discovery violations).

The Court recognizes that in "our system of justice the opportunity to be heard is a litigant's most precious right and should be sparingly denied." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1020 (8th Cir. 1999) (citation omitted). Accordingly, there is a "strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." *Id.*; *see also Bergstrom v. Frascone*, 744 F.3d 571, 575 (8th Cir. 2014) (internal quotations omitted) ("Ultimate sanction" of dismissal "should only be used when lesser sanctions prove futile."). Having considered potential sanctions, this Court concludes that it must dismiss Counts I and II of Plaintiffs' SAC with prejudice because the missing billing records go directly to these counts. The Court cannot permit D&G to bring a claim for legal fees incurred in the Plant acquisition when, after the litigation commenced, it intentionally permitted the deletion of critical evidence concerning such fees and

11

then misled the Court as to the reason for such deletion. In these circumstances, a lesser sanction of attorneys' fees or an adverse inference instruction "would not remedy the wrong that has been done to the litigation process before us." *Carey*, 186 F.3d at 1022; *see also Keefer*, 238 F.3d at 941 ("The district court is not, however, constrained to impose the least onerous sanction available."). The Court will not dismiss the entire action or issue an adverse inference instruction as to Defendants' counterclaims because the remaining claims in this litigation are separate and distinct from D&G's claim for legal fees. Defendants have not suffered meaningful prejudice as to these other claims, at least with respect to the destruction of the billing records.[3] *See Keefer*, 238 F.3d at 941 (citation omitted) (Sanction must be "just and specifically related to the claim at issue.").

Inherent Authority

Federal courts "possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Goodyear Tire & Rubber Co.*, 137 S. Ct. at 1186 (internal quotations omitted). Such authority includes "the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Chambers*, 501 U.S. at 44-45. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44 (citation omitted). A court's inherent powers include the imposition of sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975).

---

[3] No hearing is necessary to impose this sanction because the record demonstrates a willful abuse of discovery and D&G cannot be fairly surprised by the sanction. *See Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1012 (8th Cir. 1993). This Court has repeatedly expressed its right to impose sanctions for the discovery violations at issue and D&G has had numerous opportunities to explain its position. Finally, neither party has requested a hearing in advance of this decision.

The Court has determined that dismissal of Counts I and II is appropriate under Fed. R. Civ. P. 37(e)(2). As discussed above, advisory committee notes to the 2015 amendments to Rule 37 specifically provide that the rule "forecloses reliance on inherent authority or state law to determine when certain measures should be used." The sanctions imposed by this Court adequately address D&G's failure to preserve ESI, and reliance on this Court's inherent authority is accordingly unnecessary. *See Shell Oil Co.*, 559 F.3d at 899 (internal quotations omitted) ("[W]e emphasize that the better practice is to apply Rule 37 where appropriate and not allow an exercise of inherent power to obscure the Rule 37 analysis.").

In the alternative, however, the Court finds that it would impose the same sanction pursuant to its inherent authority if such sanction were not warranted under Rule 37(e)(2). The Eighth Circuit has held that a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned" under the rules. *Schlafly v. Eagle Forum*, 970 F.3d 924, 936 (8th Cir. 2020) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991)). The Eighth Circuit has also consistently recognized that courts have, by virtue of their inherent authority, the discretion "to fashion an appropriate sanction for conduct which abuses the judicial process." *Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006 (8th Cir. 2012) (citation omitted); *see also United States v. Harrington*, No. 4:18-CV-460 JAR, 2018 WL 4838543, at *2 (E.D. Mo. Oct. 4, 2018).

As discussed above, the Court has determined that D&G acted in bad faith by consciously failing to preserve relevant billing records after this litigation commenced and misrepresenting the reason such records were lost. The Eighth Circuit has also clarified that, "[t]o be sure, a district court does not abuse its discretion by imposing sanctions, *even absent an explicit bad faith finding*, where a party destroys specifically requested evidence after litigation has commenced." *Gallagher*,

13

619 F.3d at 845 (emphasis added). In this case, considering all the attendant circumstances and the Court's "substantial leeway to determine intent," the Court concludes that D&G intentionally destroyed evidence unquestionably integral to its own claim for legal fees and that its subsequent misrepresentations concerning these events constitutes an abuse of process. *Morris*, 373 F.3d at 902. D&G's behavior warrants dismissal of Counts I and II of the SAC pursuant to this Court's inherent authority.

## IV.   CONCLUSION

This Court has substantial discretion in determining appropriate sanctions for failure to preserve relevant ESI. After careful consideration, the Court finds that D&G's behavior with regard to the ESI at issue amounts to intentional, bad-faith misconduct meriting sanctions under Rule 37(e)(2). Ultimately, having considered less onerous sanctions, the Court deems it appropriate to dismiss Counts I and II of the SAC under these particular circumstances where a former attorney sued to recover legal fees and, after commencing litigation, consciously permitted the destruction of material billing records and proceeded to mislead the Court regarding the reason for such destruction. Alternatively, if such sanction were not available under Rule 37(e)(2), the same sanction would be appropriate under this Court's inherent authority. The Court does not believe that any further sanctions are appropriate considering the clear separation between D&G's claim for legal fees and the other issues in this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Terminating Sanctions (Doc. 195) is **GRANTED in part** and **DENIED in part**. Counts I and II of the Second Amended

Complaint (Doc. 90) are hereby **DISMISSED with prejudice.** The motion is denied in all other respects.

Dated this 21st day of September, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE